**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 17-cv-02755-RM-MEH**

**MICHAEL BALDUCCI,**

**Plaintiff,**

**v.**

**CONGO LTD., a Colorado Corporation,**

**Defendant.**

---

**FIRST AMENDED COMPLAINT**

---

Plaintiff Michael Balducci ("Plaintiff" or "Balducci"), by and through undersigned counsel, files this First Amended Complaint against Defendant Congo, Ltd. ("Defendant" or "Congo") and states as follows:

## NATURE OF ACTION

Plaintiff loyally served as an employee of Congo until Congo breached its employment contract with Plaintiff. Plaintiff brings this action for damages against Congo as a result of, *inter alia*, Congo's breach of contract and wrongful termination in violation of public policy.

## PARTIES

1. At all times material herein, Balducci, an individual, was and is a resident of the State of California, County of San Francisco.

2. At all times material herein, Congo was and is a Colorado corporation conducting business within San Francisco, CA, with its corporate headquarters located in Austin, Texas.

3. Upon information and belief, Congo is in the technical legal consulting industry and has done business as LawBooth and/or JustLegal through operating an online platform that connects users with attorneys.

**JURISDICTION**

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, in that this action arises between diverse parties who are citizens of different States and the amount in controversy exceeds $75,000.00.

5. This Court has personal jurisdiction over Defendant because Defendant is a resident of Colorado, and pursuant to C.R.S. § 13-1-124 because Defendant transacts business in the State of Colorado.

**FACTUAL ALLEGATIONS**

6. Plaintiff began his employment with Defendant in July 2016 as its Chief Marketing Officer ("CMO").

7. Plaintiff's duties included assisting with the development of Defendant's marketing plan.

8. Congo and Balducci entered into contract in or about July 2016. The Employment Agreement ("Agreement") specified that Balducci would only be terminated for cause.

9. In the event of a breach, the Agreement required that Defendant provide Balducci written notice of what it believed to be a failure and allow him 10 days to cure such alleged failure or breach.

10. In addition, the Agreement specified that Plaintiff's employment would automatically renew each year for five years unless a party delivered a written notice of non-renewal at least 60 days prior to the expiration of any Renewal Period.

11. The Agreement also provided that Balducci would be compensated 150,000 shares of stock, as well as additional stock upon completion of certain financing or Defendant hitting certain revenue milestones.

12. On January 18, 2017, soon after Balducci helped secure Defendant significant funding and right before he would have received additional shares, Defendant terminated Balducci's employment without cause and without written notice providing him any opportunity to cure any alleged problems or failures.

13. At all times during his employment with Defendant, Plaintiff performed his job duties satisfactorily and received positive performance reviews.

14. Balducci planned Defendant's marketing strategy and was the chief architect of its deployment plan.

15. Balducci worked directly with product and engineering teams, as well as with Congo's three co-founders.

16. Balducci led investor meetings, provided feedback and edits to presentation decks, and played a significant role in securing funding for Defendant from investors.

17. At the time Congo terminated Balducci, Defendant had recently completed a round of funding and was valued at several million dollars.

18. Upon information and belief, Defendant wrongfully terminated Plaintiff so that it would not have to provide him with his shares of stock.

19. Upon information and belief, Defendant wrongfully terminated Plaintiff because he had reported to Defendant several things that he had found to be illegal and/or unethical.

20. Defendant had been scraping websites for attorney emails and sending emails to those attorneys asking them to claim their profiles, fraudulently telling them that users were interested in them, when in fact, there had been no client outreach.

21. Defendant's employees also worked in co-working spaces and failed to properly protect their computers and/or information, which put their confidential information at risk and exposed the information to possible data breaches.

22. Plaintiff told Defendant on numerous occasions that it needed to be more careful with its information.

23. Plaintiff personally paid for work-related travel and costs. To date, Congo has failed to reimburse Plaintiff for any incurred costs or pay Plaintiff any wages for the entire length of his employment.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

24. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

25. To recover damages from a defendant for breach of contract, a plaintiff must prove all of the following: 1. That the parties formed a contract; 2. That defendant did something or failed to do something that violates the contract; and 3. That plaintiff did all, or substantially all, of the significant things that the contract required him to do or was otherwise excused.

26. Plaintiff and Defendant entered into a contract upon hire and throughout the term of Plaintiff's employment.

27. The contract was in writing and provided that Plaintiff would not be terminated without good cause, that even if Defendant had an issue with his performance, Plaintiff would get ten days to cure the problem, and that Plaintiff would earn agreed-upon wages and fringe benefits.

28. Plaintiff undertook and continued employment and duly performed all of the conditions of the employment agreement to be performed by him until prevented by Defendant from further performance.

29. Balducci planned Defendant's marketing strategy and was the chief architect of its deployment plan. He worked directly with product and engineering teams and Congo's three co-founders.

30. Balducci led investor meetings, providing feedback and edits to presentation decks, and upon information and belief, played a significant role in securing Defendant's funding from investors. Plaintiff had, at all times, been ready, willing and able to perform all of the conditions of the agreement to be performed by him.

31. On or about January 18, 2017, Defendant breached the employment agreement by discharging Plaintiff without good cause and despite his continued satisfactory performance.

32. Plaintiff suffered damages legally caused by the breach of contract as described in this Complaint.

## SECOND CLAIM FOR RELIEF
## (Breach of the Implied Covenant of Good Faith and Fair Dealing)

33. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

34. The agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff

from performing any or all of the conditions of the agreement that they agreed to perform, or any act that would deprive Plaintiff of the benefits of the agreement.

35. Plaintiff worked for Defendant for many months and reasonably relied on the provisions of the personnel manual regarding the causes for which employees could be written up or discharged and the procedures set forth for such corrective action including terminations for the expectation that Defendant would apply its policies even-handedly to afford Plaintiff the protections of those procedures if Defendant believed there was cause to take corrective action against Plaintiff, including termination.

36. Nonetheless, Defendant failed to follow the agreed-upon terms of the bargain and, instead, Defendant summarily terminated Plaintiff's employment.

37. Defendant breached the implied covenant of good faith and fair dealing under the contract by discharging Plaintiff intentionally, without just or probable cause, in bad faith and for reasons extraneous to the contract. Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive Plaintiff of the benefits thereof.

38. Defendant further breached the implied covenant of good faith and fair dealing by violating and failing to follow its own personnel policies and past practices before discharge.

39. Plaintiff performed all the duties and conditions of the contract.

40. Defendant knew that Plaintiff had fulfilled all of his duties and conditions under the contract.

41. Defendant further breached the implied covenant of good faith and fair dealing by violating and failing to follow the terms of the contract.

42. As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer, monetary losses and other damages in an amount to be established at trial.

43. As a direct and proximate result of Defendant's conduct, Plaintiff sustained damages, including, but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities and harm to his reputation, mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial.

**<u>THIRD CLAIM FOR RELIEF</u>**
**(Promissory Estoppel)**

44. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

45. Defendant is liable for damages based on the doctrine of Promissory Estoppel. The elements of the doctrine of Promissory Estoppel, as described in section 90 of the Restatement of Contracts, are: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

46. First, Defendant made an incredibly significant promise to Plaintiff by offering him a position as CMO with a contract length of five years and promising that he would only be terminated for cause. This promise caused Plaintiff to act in reliance on said promise, including forgoing other employment opportunities.

47. Second, Plaintiff's decision-making process depended on Defendant's promise. This promise caused Plaintiff to act in reliance on said promise including forgoing other employment opportunities.

48. Third, Plaintiff suffered a significant detriment due to Defendant's promise not being fulfilled. Plaintiff worked without pay for months for Defendant, foregoing other job opportunities and pay.

49. Finally, relief can only come in the form of Defendant fulfilling its promise by satisfying the originally agreed-upon terms.

50. As a proximate result of Defendant's wrongful acts, Plaintiff has suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings, bonuses, deferred compensation, stock options, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

**FOURTH CLAIM FOR RELIEF**
**(Wrongful Discharge in Violation of Public Policy)**

51. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

52. Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of Colorado. *See Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo.App.), cert. dism'd (1989); *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992).

53. Defendant terminated Plaintiff's employment in violation of public policy.

54. Plaintiff is informed and believes and, based thereon, alleges that Defendant's conduct, as described herein, was substantially motivated by Plaintiff's opposition to and/or reporting of the actual and/or perceived violations described herein, including the reporting of scraping websites for attorney emails and sending fraudulent notices to those attorneys.

55. Plaintiff also reported that Defendant's employees were exposing confidential data to potential security breaches.

56. The conduct of Defendant described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design, and purpose of injuring Plaintiff.

57. Defendant was aware, or reasonably should have known, that Plaintiff had a right to refuse to participate and/or to report possible fraud and confidential data breaches.

58. As a proximate result of Defendant's wrongful acts, Plaintiff has suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings, bonuses, deferred compensation, stock options, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

59. Defendant, through its officers, managing agents, and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above.

60. The decision to discharge Plaintiff was contrary to the clearly expressed public policy of the State of Colorado and the United States, resulting in damages to the Plaintiff.

## FIFTH CLAIM FOR RELIEF
**(Violation of the Colorado Wage Act)**
(C.R.S. § 8-4-101, et seq.)

61. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

62. Defendant has failed to provide Plaintiff wages and compensation as contemplated by the Employment Agreement entered into between the parties.

63. During Plaintiff's employment, Defendant required Plaintiff to incur expenses related to the business operations of Defendant. These expenses include(d), without limitation, costs related to cell phone, internet usage, and travel.

64. These expenditures were incurred in direct consequence of the discharge of the duties of Plaintiff, or of his obedience to the directions of the employer and have not yet been reimbursed by Defendant.

65. At all relevant times, Defendant was aware of and was under a duty to comply with various provisions of the Colorado Wage Act.

66. Balducci submitted a written demand for wages to Defendant on January 23, 2017, and on several occasions thereafter.

67. Defendant has failed to compensate or reimburse Plaintiff in violation of the Colorado Wage Act.

68. Plaintiff demands compensation as contemplated by the employment agreement, reimbursement for expenditures or losses in direct consequence of the discharge of his duties, or of his obedience to the directions of Defendant, plus return of all cash bonds or other coerced investments in the business of Defendant, with interest, at the statutory rate, penalties afford by statute, attorneys' fees and costs, and all other appropriate relief.

**SIXTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

69. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

70. Defendant requested, by words or conduct, that Balducci perform services for the benefit of Defendant.

71. Balducci performed the services as requested. Among other things, he planned the launch of Defendant's product and secured significant funding from investors.

72. Defendant has not paid Balducci for his services.

73. Defendant received the benefit of Plaintiff's performance and services.

74. Defendant's acceptance and retention of the benefit of Plaintiff's work without paying for it is inequitable and contrary to the fundamental principles of justice, equity, and good conscience.

75. By reason thereof, Plaintiff is entitled to the reasonable value of his services, the amount according to proof at the time of trial.

WHEREFORE, Plaintiff Michael Balducci prays for judgment against Defendant Congo Ltd., in an amount to be determined at trial, pre-judgment and post-judgment interest, costs and expert witness fees, attorney's fees, and for such other and further relief as provided by statute and that the Court may deem proper.

Respectfully submitted this 25th day of April, 2018.

*/s/Andrew C. Quisenberry*
Andrew C. Quisenberry
BACHUS & SCHANKER, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone: 303-893-9800
Facsimile: 303-893-9900
andrew.quisenberry@coloradolaw.net