IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02755-RM-MEH

MICHAEL BALDUCCI,

Plaintiff,

v.

CONGO LTD.,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Plaintiff's Motion for Default Judgment. ECF No. 46. I find that this Court has subject matter jurisdiction to determine this dispute and personal jurisdiction over Defendant. Furthermore, Plaintiff's unchallenged facts assert a valid claim for breach of contract. As discussed below, I conclude that Plaintiff is entitled to damages of $61,073.65. Accordingly, pursuant to Fed. R. Civ. P. 55(b)(2), I recommend that the Honorable Raymond P. Moore **grant in part** and **deny in part** the Motion.

**BACKGROUND**

**I. Unrebutted Facts**

1. Defendant is a company in the "technical legal consulting industry." It operates an online platform that connects users to attorneys. First Am. Compl. ("FAC") ¶ 3, ECF No. 36.

2. At all relevant times, Defendant was incorporated under the laws of Colorado and kept its principal place of business in Austin, Texas. *Id.* ¶ 2.

3. Plaintiff and Defendant entered into an employment agreement (the "Agreement") in or about July 2016 for Plaintiff to serve as Defendant's Chief Marketing Officer ("CMO"). *Id.* ¶¶ 6, 8.

4. Plaintiff was entitled to 150,000 shares of Defendant's stock upon hire. *See* FAC ¶ 11; Decl. of Michael Balducci in Supp. of Pl.'s Mot. Default J. ("Balducci Decl.") ¶ 12, ECF No. 46-1.

5. The Agreement stated that Plaintiff could be terminated only for cause. If Defendant believed Plaintiff was in breach of the contract, it was required to provide him written notice of the purported breach and ten days to cure. FAC ¶¶ 8–9.

6. As CMO, Plaintiff contributed to the development of Defendant's marketing plan, *id.* ¶ 7, by leading the effort to design the Lawbooth.com marketplace, which would pair businesses and consumers with attorneys. Balducci Decl. ¶ 12.

7. Plaintiff headed a project to deploy over five million webpages. *Id.*

8. If the webpages had been deployed as planned, Plaintiff would have been entitled to 250,000 additional shares of Defendant's stock. *Id.* ¶ 14.

9. On or about January 18, 2017, Defendant terminated Plaintiff without good cause and without written notice of a breach of the Agreement. *Id.* ¶ 12.

10. After Defendant terminated Plaintiff, the company decided not to pursue deploying the webpages. *Id.* ¶ 13.

11. Plaintiff performed his duties satisfactorily and received positive performance reviews. FAC ¶ 13.

12. Defendant's stock was valued at $0.40 per share. Balducci Decl. ¶ 15.

13. Plaintiff spent $1,073.65 on work-related expenses but was not reimbursed by Defendant. Balducci Decl. ¶ 17.

14. Defendant has not paid Plaintiff any wages for his employment. FAC ¶ 23.

15. Prior to and during his employment with Defendant, Plaintiff did not pursue a number of other employment opportunities. Balducci Decl. ¶ 18.

16. For example, Plaintiff did not pursue six projects from Five Mill, Inc., which would have paid him $540,000. *Id.* ¶ 19.

17. Plaintiff also declined three other projects that would have created $150,000 in income. *Id.* ¶ 20.

## II. Procedural History

Based on the preceding facts, Plaintiff filed his Complaint in Superior Court of California, County of San Francisco, on May 26, 2017. ECF No. 1-3. Defendant removed the suit to the Northern District of California on July 19, 2017. *See* ECF No. 1-1. It then filed a Motion to Dismiss under Rule 12(b), or in the alternative, to Transfer Venue on July 26, 2017. ECF No. 1-11. On November 15, 2017, Judge Westmore granted the motion to the extent it sought a transfer of venue to this District. ECF No. 1.

In this Court, Defendant answered Plaintiff's Complaint on December 5, 2017. ECF No. 11. I granted Plaintiff leave to file a first amended complaint on April 24, 2018, ECF No. 35, which he filed on April 25, 2018, ECF No. 36. The FAC asserts claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) wrongful discharge in violation of public policy; (5) violation of the Colorado Wage Claim Act ("CWCA"); and (6) unjust enrichment. *Id.* ¶¶ 24–68. Defendant's deadline to respond to the FAC

was May 9, 2018. *See* Fed. R. Civ. P. 15(a)(3) (stating a party has fourteen days to respond to an amended pleading). Defendant failed to answer the FAC, and Plaintiff moved for entry of default on June 20, 2018. ECF No. 42. The Clerk of the Court entered default against Defendant on June 21, 2018. ECF No. 43.

Plaintiff filed the present Motion on November 8, 2018, seeking default judgment on Claim 1 for breach of contract and Claim 5 under the CWCA. ECF No. 46. Plaintiff asserts that he is entitled to $851,073.65 on the breach of contract claim and $22,952.70 under the CWCA, for a total of $874,026.35. Despite proper service of the Motion, Defendant did not file a response. The Court held an evidentiary hearing on January 15, 2019, at which Plaintiff and Dan Soha, a founding partner of Five Mill, Inc., Decl. of Dan Soha in Supp. of Pl.'s Mot. Default J. ¶ 4, ECF No. 46-2, testified to Plaintiff's damages.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs entry of default and motions for default judgment. If a party fails to answer or otherwise defend a case, the clerk of the court may enter default pursuant to Rule 55(a). Fed. R. Civ. P. 55(a). After entry of default, a party cannot defend a claim on the merits. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact." (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002))); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

The plaintiff may then apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). In analyzing a motion for default judgment, courts must consider whether the unchallenged facts

constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining the unchallenged facts, courts accept as true the well-pleaded allegations in the complaint. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Malibu Media, LLC v. Ling*, 80 F. Supp. 3d 1231, 1239 (D. Colo. 2015). Additionally, courts accept the undisputed facts set forth in affidavits and exhibits. *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007). "Damages may be awarded only if the record adequately reflects the basis for the award as supported by the evidence in the record." *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL 2263079, at *3 (D. Colo. May 24, 2017). The court may conduct a hearing to determine damages. Fed. R. Civ. P. 55(b)(2)(B). It "need not conduct a fact-intensive inquiry, but must ensure that there is 'a basis for the damages specified in the default judgment.'" *Jackson v. AML Constr. & Design Grp.*, No. 16-cv-01847-PAB-MEH, 2017 WL 2812823, at *2 (D. Colo. June 29, 2017) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Trial courts are vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., L.P. v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d 610, 615 (2d Cir. 1999)).

## ANALYSIS

I recommend entering default judgment in favor of Plaintiff. After briefly addressing subject matter and personal jurisdiction, I find that Plaintiff's FAC and supporting declaration establish a claim for breach of contract, but he is not entitled to recover under the CWCA. For the breach of contract claim, I recommend awarding Plaintiff monetary relief in the amount of $61,073.65.

### I. Subject Matter and Personal Jurisdiction

In determining whether a default judgment is warranted, I must first consider subject matter and personal jurisdiction. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986) (stating that lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (finding that the district court erred in failing to determine personal jurisdiction before entering default judgment).

#### A. Subject Matter Jurisdiction

I recommend finding that this Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332, because complete diversity exists between the Parties and the amount in controversy exceeds $75,000. At all relevant times, Plaintiff was a citizen of California. FAC ¶ 1. Defendant is a corporation that is a citizen of Colorado and Texas; the company is incorporated under the laws of Colorado, and its principal place of business is in Austin, Texas. FAC ¶ 2; *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) ("For diversity purposes, a corporation is 'deemed to be a citizen of any State by which it has been incorporated and of the

State where it has its principal place of business.'" (quoting § 1332(c)(1)). Thus, complete diversity exists in this case. *Ravenswood Inv. Co. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) ("[E]ach plaintiff must be diverse from each defendant to have what is known as complete diversity."). Further, Plaintiff seeks greater than $800,000 for his breach of contract and CWCA claims. *See* Mot. Default J. 9. I find the amount in controversy requirement is satisfied. *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994) (noting the amount in controversy requirement is met unless it "appear[s] to a legal certainty that [the plaintiff] cannot recover at least" the jurisdictional minimum).

B. Personal Jurisdiction

I also recommend finding that this Court has personal jurisdiction over Defendant, because it is incorporated under the laws of Colorado. FAC ¶ 2; *see* Balducci Decl. at 7, 28; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-cv-02065-RM, 2017 WL 4278493, at *1 (D. Colo. Sept. 27, 2017) ("The Court has personal jurisdiction over Defendant as it is a Colorado corporation . . . ."). Further, Defendant waived any personal jurisdiction defense when it filed an answer to the original complaint in this District. *Pulse v. Larry H. Miller Grp.*, No. 03-CV-02073-WDM-PAC, 2005 WL 1563222, at *8 (D. Colo. June 20, 2005) ("Under Fed. R. Civ. P. 12(h), a defendant waives the defense of lack of personal jurisdiction or insufficiency of process by failing to assert those defenses in a pre-Answer motion or in the Answer.").

## II. Individual Claims

### A. Breach of Contract

I find that the unchallenged facts in this case establish Defendant breached its contract with Plaintiff. "[A] party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff[.]" *W. Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). Here, Plaintiff and Defendant entered into the Agreement in July 2016. FAC ¶ 8. The contract stated Plaintiff could only be terminated for cause. *Id.* Additionally, the contract provided that if Defendant believed Plaintiff was in breach, it was required to provide written notice of the alleged failure and allow Plaintiff ten days to cure the breach. *Id.* ¶ 9. Plaintiff performed his duties satisfactorily at all times during his employment. *Id.* ¶ 13. Defendant terminated Plaintiff without cause or providing written notice of breach on January 18, 2017. *Id.* ¶¶ 12, 31. Plaintiff suffered damages from the breach of the contract, and he was entitled to compensation in the form of shares of Defendant's stock. Balducci Decl. ¶ 15.

Plaintiff seeks three types of damages for the breach of contract claim. First, he asserts he is entitled to the value of the stock that was due to him as compensation under the Agreement. Second, he argues he is entitled to damages for the work opportunities he declined prior to and during his employment with Defendant. Third, he claims he is entitled to unreimbursed work expenses.

*1. Value of the Stock*

First, Plaintiff seeks damages for the value of the stock that was due to him under the terms of the Agreement. The appropriate measure of damages for a breach of contract claim is the sum that places the non-breaching party in the position it would have enjoyed "had the breach not occurred." *Husband v. Colo. Mountain Cellars, Inc.*, 867 P.2d 57, 60 (Colo. App. 1993). "However, the non-breaching party is not entitled to be placed in a position more advantageous than that for which it contracted." *Smith v. Hoyer*, 697 P.2d 761, 765 (Colo. App. 1984).

Here, the unchallenged facts demonstrate Plaintiff was due 150,000 shares of Defendant's common stock under the terms of the Agreement. Those 150,000 shares were due upon hire. Balducci Decl. ¶ 12. Plaintiff attests that he believes the value of each share of stock is $0.40. *Id.* ¶ 15. He is entitled to the value of the stock as damages for this claim. *Cf. Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 922 (Colo. App. 2002) (finding that an employee was entitled to the value of stock options as damages under a CWCA claim). The total value of the stock is $60,000 (150,000 shares x $0.40/share). Accordingly, I respectfully recommend granting Plaintiff's request for $60,000 for the value of those shares.

Plaintiff also seeks the value of an additional 250,000 shares he claims was due to him under the Agreement, but I do not agree that the unchallenged facts demonstrate he was entitled to these shares. Plaintiff attests that he "was spearheading the overall growth of the marketplace to have over 5 million webpages to be deployed online." Balducci Decl. ¶ 12. He states that "[i]f the[] webpages were deployed as planned, I *would have been* granted an additional 2.5% (250,000 shares) of equity" under the Agreement. *Id.* ¶ 14 (emphasis added). But, critically, Plaintiff does

not state that the webpages were ever deployed. He states, "We planned to deploy most of these webpages live just before my termination. It was only after I was terminated that [Defendant] said it was not going to pursue this anymore." *Id.* ¶ 13. Plaintiff fails to present unchallenged facts that the trigger of this award of stock (deploying the webpages) ever occurred. Without this fact, I do not agree that Plaintiff is entitled to the additional 250,000 shares of stock under the breach of contract claim. Accordingly, I recommend his Motion for the value of these shares be denied.

*2. Alternate Work Opportunities*

Plaintiff also claims he is entitled to "special damages" for the value of projects he purportedly declined "before and during his employment with Defendant." Mot. Default J. 6–7. Both in the FAC and his supporting affidavit, Plaintiff states he declined several other opportunities for work that would have generated income.[1] Balducci Decl. ¶¶ 18–20. For example, Plaintiff states he declined six projects that were referred to him by Five Mill, Inc., for which he would have made $540,000. *Id.* ¶ 19. From these and similar opportunities, he seeks a judgment for $690,000. Mot. Default J. 9.

To support his argument for these damages, Plaintiff cites only to *Denny Construction, Inc. v. City & County of Denver ex rel. Board of Water Commissioners*, 199 P.3d 742, 751 (Colo. 2009). That case stands for the proposition that a breaching party to a contract may be liable for

---

[1] In the Motion, Plaintiff states he declined these offers, because he "was restricted from conducting his own business in conflict with Defendant per his employment [A]greement." Mot. Default J. 6. To support this assertion, he cites to a provision in the Agreement that prevented him from undertaking "any outside activity . . . that could reasonably give rise to a conflict of interest . . . ." Balducci Decl. Ex. 1 ¶ 7(b). But as I discuss herein, I find this argument irrelevant to whether he is entitled damages for the funds he would have received had he accepted these opportunities, because he was not denied the income as a result of Defendant's breach of the Agreement.

the other party's lost profits when, "at the time the parties entered into [a] contract . . . the defendant knew or should have known that the[] [lost profit] damages would probably be incurred by the plaintiff if [the defendant] breached the contract." *Id.* (first alteration added). But the "damages" Plaintiff seeks in this case are different than the damages addressed in *Denny*.

In that case, Denver's Board of Water Commissioners declared Denny Construction in default of a contract to build the Board's new headquarters. *Id.* at 743. It also filed a claim with Denny's insurance company. *Id.* at 744. As a consequence, the insurance company reduced, and later eliminated, Denny's bonding capacity. *Id.* Soon, both parties filed breach of contract claims against each other. *Id.* At trial, Denny presented evidence that it lost profits as a result the Board's conduct, demonstrating that after the default claim, it could no longer secure the bonds necessary to be legally eligible for other public works projects. *Id.* As a result, Denny did not bid on opportunities that it otherwise would have. *Id.* The jury found that the Board—not Denny—had breached the contract. It further awarded the company substantial damages for lost profits. *Id.* at 745. On appeal, the Colorado Supreme Court recognized that damages for lost profits may be recovered in a breach of contract action, so long as the lost profits were "the foreseeable result of a breach at the time the contract was made." *Id.* at 746 (quoting *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 240 (Colo. 2003)).

In this case, Plaintiff's citation to *Denny* is inapt, because the "special damages" he seeks from "pass[ing] on several projects referred to him during the period before and during his employment with Defendant," Mot. Default J. 6, do not show Plaintiff lost this income because Defendant breached the Agreement. In other words, had Defendant performed its obligations fully, Plaintiff still would have declined these other projects. *See* Balducci Decl. ¶¶ 18–20. Thus

any income from "passed" projects in not a damage Plaintiff suffered as a result of Defendant's breach of the Agreement. *Life Care Ctrs. of Am., Inc. v. E. Hampden Assocs. Ltd.*, 903 P.2d 1180, 1186 (Colo. App. 1995) ("The [breach of contract] damages awarded must be 'traceable to and [must be] the direct result of the wrong to be redressed.'" (second alteration in original) (quoting *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1025 (Colo. App. 1993))); *see Husband*, 867 P.2d at 60 ("[T]he measure of damages for breach of contract is that sum which places the nondefaulting party in the position that party would have enjoyed had the breach not occurred."). Had Defendant not breached the Agreement, Plaintiff still would not have earned this income. Accordingly, he is not entitled to these requested damages. *Smith*, 697 P.2d at 765 ("[T]he non-breaching party is not entitled to be placed in a position more advantageous than that for which it contracted.") For these reasons, I respectfully recommend that Plaintiff's Motion for these funds be denied.

*3. Unreimbursed Expenses*

Plaintiff requests a judgment for unreimbursed work-related expenses. Mot. Default J. 9. Plaintiff states he "is entitled to general contract damages" for "$1,073.65 in unpaid reimbursements." *Id.* at 6. I find that Plaintiff is entitled to the expenses he incurred while employed by Defendant. Accordingly, I respectfully recommend that he is entitled to default judgment for $1,073.65 for these unreimbursed expenses.

B. <u>Colorado Wage Claim Act</u>

Plaintiff also seeks a judgment of $22,952.70 under the CWCA. *Id.* Plaintiff's claim to this amount is based on his allegation that Defendant did not pay him any compensation during his employment. Mot. Default J. 8. As a result, he argues, the CWCA entitles him to a monetary

award based on Colorado's minimum wage multiplied by his total hours worked, plus statutory penalties. *Id.* at 8–9. To support his claim, Plaintiff cites to the Colorado Administrative Code, which states that "[i]f an employee is entitled to and has been paid less than the Colorado minimum wage, and has not earned more than the Colorado minimum wage, then the Colorado minimum wage will be used to calculate average daily earnings." 7 CCR § 1103-7:2.3.2.

After Plaintiff filed the Motion, I ordered supplemental briefing to address this claim. ECF No. 51. Specifically, I directed him to provide legal support for his position that an employee whose compensation was contractually required to be paid entirely in stock, can make a claim for cash wages under the CWCA when the employee was terminated but was not paid any compensation pursuant to the contract. *Id.* But upon review of his brief, I am not persuaded that the claim is proper. The dispositive fact here is, upon his termination, Plaintiff was entitled to the payment of wages in the form of 150,000 shares of stock. The contract mentions nothing about any entitlement to cash wages set by Colorado's minimum wage.

Plaintiff's argument relies on *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916 (Colo. App. 2002). That case involved an executive who brought suit against her former employer for breach of contract and under the CWCA for both cash wages and stock options she earned during her employment. *Id.* at 920. As in our case, the executive's compensation was set by an employment contract. *Id.* at 919. But in contrast to this case, Montemayor's contract stated she would be paid a base salary *and* an award of stock options.[2] *Id.* After the company constructively discharged her in breach of the contract, she sued the employer under the two theories. *Id.* at 920. The parties stipulated to submit the breach of contract claim to a jury and the CWCA claim to the

[2] The award of stock options was contingent on a process that is not relevant here. *See id.*

trial court as the finder of fact. *Id.* The jury found in favor of the executive on the breach of contract claim but did not award the value of the stock options. *See id.* at 924. The court also found for the executive under the CWCA, but decided an award for the value of the options was appropriate. *Id.* The defendant appealed the court's award of damages, arguing that the breach of contract claim subsumed the CWCA claim, but the Colorado Supreme Court rejected the argument. *See id.* The supreme court found that the breach of contract and CWCA claims were distinct causes of action. *Id.* As such, it stated the trial court did not err when it awarded damages for the value of the stock options, even though the jury had declined to do so when presented with the same facts. *Id.*

Plaintiff argues this case is like *Montemayor*—that he brings distinct claims for breach of contract and under the CWCA. Pl.'s Suppl. Br. 2. He claims he is entitled to the value of the stock for the breach of contract claim and for cash wages under the CWCA. *Id.* However, unlike this suit, the executive's contract in *Montemayor* provided both a base salary and stock options. 64 P.3d at 919. Under the CWCA, "[a]n employer is liable . . . if the [it] does not pay an employee wages *he or she earned* at the time of discharge." *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 421 (Colo. App. 2003) (emphasis added). In this case, the contract provided that Plaintiff be solely compensated in the form of stock. *See* FAC ¶ 11. As such, he was entitled to payment for the stock's value under the CWCA after his termination. *See Montemayor*, 64 P.3d at 924 (finding that stock options are "wages and compensation" in the CWCA).

Consequently, the regulatory language Plaintiff cites is not applicable: "If an employee *is entitled to* and has been paid *less than* the Colorado minimum wage, and has not earned more than the Colorado minimum wage, then the Colorado minimum wage will be used to calculate average

daily earnings." 7 CCR § 1103-7:2.3.2 (emphasis added). As I discussed above, Plaintiff is entitled to $60,000 for the value of the stock he did not receive. He asserts that he worked approximately 1,300 hours for Defendant. Balducci Decl. ¶ 17. Thus, Plaintiff was entitled to compensation at a rate of approximately $46.15/hour ($60,000 / 1,300 hours), which is *more* than Colorado's minimum wage. The wages he could demand under the CWCA is the compensation he was *entitled to* by the terms of the Agreement, and, therefore, 7 CCR § 1103-7:2.3.2 has no role here. Accordingly, I respectfully recommend the District Court find Plaintiff is not entitled to these "wages" under the CWCA.

## CONCLUSION

In sum, Plaintiff is entitled to a default judgment of $61,073.65 against Defendant on the breach of contract claim. However, he is not entitled to the other damages he seeks. Accordingly, I respectfully recommend that Plaintiff's Motion for Default Judgment [filed November 8, 2018; ECF No. 46] be **granted in part** and **denied in part**.[3]

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Dated and entered at Denver, Colorado, this 19th day of March, 2019.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge