**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 17-cv-02755-RM-MEH

Michael Balducci,

*Plaintiff*,

*v*.

Congo Ltd.,

*Defendant*.

---

**ORDER**

---

This case seeks contractual and statutory damages following Plaintiff Balducci's termination without compensation. (*See generally* Am. Compl., ECF No. 36.) On June 21, 2018, the Clerk of the Court filed an Entry of Default against Defendant Congo Ltd. (ECF No. 43.) Balducci then moved for default judgment (ECF No. 46), which Magistrate Judge Hegarty recommended be granted in part. (Recommendation, ECF No. 53). Before the Court are Balducci's timely objections to the Recommendation, in which he argues that the magistrate judge improperly failed to recommend that he be awarded two requested categories of damages. (Objection, ECF No. 54.) The Court **SUSTAINS** in part and **OVERRULES** in part the Objection.

## I. UNCHALLENGED FACTS

Defendant Congo is a technical legal consulting company with an online platform that connects users to attorneys. It was incorporated in Colorado and has its principle place of business in Texas. Balducci, a California resident, signed an employment agreement to become

Congo's Chief Marketing Officer. Pursuant to that agreement, Balducci was entitled to 150,000 shares (1.5%) of Congo's stock. Additionally, relevant here, he would have received "subject to the approval of the Board, an option to purchase . . . an amount equal to two and a half percent (2.5%) of the Pre-money Shares upon the indexing by Google of two hundred thousand (200,000) or more [web] pages." Congo's stock was valued at $0.40 per share. Balducci could only be terminated for cause and upon notice.

Balducci contributed to the development of Congo's marketing plan by leading the effort to design the Lawbooth.com marketplace, which would pair businesses and consumers with attorneys, and heading a project to deploy over five million webpages. In all, he worked approximately 1,300 hours for Congo. On or about January 18, 2017, Congo terminated Balducci without good cause and without notice. He had been planning to deploy the web pages shortly before then. In support of his motion for default judgment, Balducci declared that the web pages were never deployed, and "only after [he] was terminated . . . [the company] said it was not going to pursue this anymore." In support of the Objection, he now declares that Congo benefitted from his work by later deploying the web pages "under a different brand." Balducci was never compensated by Congo, and he mailed a written demand letter to the company on January 23, 2017.

## II. LEGAL STANDARD

A party may not sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Wright et al., Fed. Prac. & Proc. § 2688, at 63. Additionally, a court need not accept conclusory

allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Courts follow two steps before granting default judgment. First, a court must ensure it has subject matter and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). Second, the well-pleaded allegations of fact—which are admitted by a defendant upon default—must support a judgment on the claims against the defaulting defendant. *See Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014). The Court reviews timely, specific objections to a magistrate judge's recommendation *de novo*. Fed. R. Civ. P. 72(b).

## III. ANALYSIS

In his motion for default judgment, Balducci sought contractual and statutory damages. First, he requested $160,000, which is the value of 400,000 shares of stock—the 150,000 due him upon signing the employment agreement, plus 250,000 shares representing the 2.5% to which he would be entitled if he met the web page performance condition. Second, he sought $540,000 in foregone revenue from several outside projects while he was at Congo. Third, he asked for $22,952.70 in wrongfully withheld wages and penalties under the Colorado Wage Act (CWA). Finally, he asked for $1,073.65 in unreimbursed work-related expenses. The magistrate judge found that the Court has both subject-matter and personal jurisdiction and recommended that Balducci be granted $60,000 for the value of 150,000 shares and $1,073.65 in unreimbursed

expenses. The Court agrees it has jurisdiction and that Balducci is entitled to these amounts. However, the Objection argues that he is further entitled to the value of 250,000 shares and statutory penalties under the CWA.

**A. Balducci is not entitled to the value of an additional 250,000 shares.**

Per the employment agreement, conditions must be met before Balducci could be entitled to the additional 250,000 shares. The magistrate judge determined they were not met because—according to Balducci's own sworn declaration—the web pages were not deployed by Congo as planned, and thus the condition precedent to vesting was never satisfied. But in support of the Objection, Balducci modified his position. He now claims that his work was actually used: incorporated into other company platforms and later deployed under different aliases. But even as restated, the uncontested facts do not confirm the condition precedent. As stated in the employment agreement, his option to purchase an additional 2.5% of stock is not triggered when the websites are deployed but when Google indexes 200,000 or more pages. There is nothing in any declaration or pleading detailing whether this ever took place. Therefore, because Balducci has not, the Court cannot say with certainty that he was entitled to purchase these additional shares, much less entitled to their value without purchasing them, and default judgment for the value of those shares remains inappropriate.

**B. Balducci is entitled to penalties under the CWA.**

When an employer-employee relationship is improperly violated by the employer, the CWA provides that wages for labor are due to the employee immediately. Colo. Rev. Stat. Ann. § 8-4-109. Balducci's employment agreement entitled him to compensation only in the form of stock, not salary or other wages. As the magistrate judge recognized, it is now settled that stock shares or "stock options may be considered as compensation under the CWCA." *Montemayor v.*

*Jacor Commc'ns, Inc.*, 64 P.3d 916, 922 (Colo. App. 2002). And here, Balducci's owed payment of 150,000 shares is set forth in the "compensation" section of his employment agreement. Thus, the CWA covers the nonpayment of the value of those shares. However, Balducci's motion for default judgment curiously calculated additional requested compensation and penalties under the CWA with reference to minimum wage, rather than to the value of shares to which he was entitled. Ultimately, the magistrate judge found these requests inapplicable and declined to recommend such recovery. In his Objection, Balducci submits that "[t]his mistake on the part of [his] counsel should not result in [ ] preclusion to recover statutory penalties pursuant to C.R.S. § 8-4-109 for the value of the shares of stock owed following [Congo's] failure to tender any payment to [him] after he sent a wage demand letter." Because his entitlement to statutory penalties is clear from the declarations and contract, the Court does not punish him for this missive.

The relevant section of the CWA states that if an employee's compensation is not paid within fourteen days after a written demand,

> the employer shall be liable to the employee for the wages or compensation, and a penalty of the sum of the following amounts of wages or compensation due or, if greater, the employee's average daily earnings for each day, not to exceed ten days, until such payment or other settlement satisfactory to the employee is made: (I) One hundred twenty-five percent of that amount of such wages or compensation up to and including seven thousand five hundred dollars; and (II) Fifty percent of that amount of such wages or compensation that exceed seven thousand five hundred dollars.

Colo. Rev. Stat. Ann. § 8-4-109. The appropriate compensation owed under the CWA lies in the value of the 150,000 shares discussed above, and Balducci in not entitled to use the CWA to effect a double recovery. *Quist v. Specialties Supply Co.*, 12 P.3d 863, 866 (Colo. App. 2000) ("A plaintiff may not receive a double recovery for the same injuries or losses arising from the

same conduct.”). However, the CWA provides recourse to additional penalties. *Cf. Evans v. Loveland Auto. Investments, Inc.*, 632 F. App’x 496, 498 (10th Cir. 2015) (“[A]n award of the penalty under [the state law] and an award of liquidated damages under the FLSA do not constitute a double recovery.”). Here, the compensation due is $60,000. Using the statutory calculus, Balducci is entitled to CWA penalties of $7,500 plus fifty percent of the amount $60,000 exceeds $7,500—or $33,750 in all.

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** the recommendation of the magistrate judge. (ECF No. 53.) The Objection (ECF No. 54) is **SUSTAINED IN PART** and **OVERRULED IN PART**. In accordance with the foregoing, the Clerk shall enter default judgment in favor of Plaintiff Balducci in the amount of **$94,823.65**.

DATED this 29th day of May, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge